# In the United States Court of Federal Claims

OFFICE OF SPECIAL MASTERS
No. 08-612V
(Filed: December 8, 2014)
**NOT TO BE PUBLISHED**[1]

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * | | |
| ANAND NADAR and <br> NIKETA CHHEDA, parents <br> of J.A.N., a minor, <br><br> Petitioners, <br><br> v. <br><br> SECRETARY OF HEALTH AND <br> HUMAN SERVICES <br><br> Respondent. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | <br><br><br><br><br> Vaccine Act Fees and Costs; <br> Reasonable Basis; Attorney <br> Hours and Rates |
| * * * * * * * * * * * * * * * * * * * * * * * * * | | |

## REVISED DECISION AWARDING ATTORNEYS' FEES AND COSTS

**HASTINGS,** *Special Master*.

      In this case, under the National Vaccine Injury Compensation Program (hereinafter "the Program")[2], Petitioners seek, pursuant to 42 U.S.C. § 300aa-15(e)(1), an award for attorneys' fees and other costs incurred in attempting to obtain Program compensation. After careful consideration, I have determined to grant the request in part, for the reasons set forth below.

---

[1] The undersigned intends to post this decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)).

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §300aa-10 et seq.  Hereinafter, individual section references will be to 42 U.S.C. §300aa of the Act.

# I

# PROCEDURAL BACKGROUND AND RELEVANT FACTS

The Petitioners, Anand Nadar and Niketa Chheda, filed this petition on August 22, 2008, alleging that their minor child, J.A.N., was injured by several vaccinations. (Petition at 1.) Petitioners, at the time, were represented by attorney Justin F. Madden, and no medical records accompanied the filing. On November 4, 2008, attorney Jack Landskoner replaced Mr. Madden as counsel of record. The case was originally assigned to Chief Special Master Golkiewicz, but was reassigned to my docket on January 23, 2012.

On February 3, 2011, Special Master Golkiewicz ordered Petitioners to inform the Court within 30 days if they wished to proceed with their claim. Petitioners did not respond to this order, and on April 14, 2011, the Court issued an Order to Show Cause, directing the Petitioners to inform the Court how they wished to proceed, or otherwise indicate why the case should not be dismissed for failure to prosecute. On May 17, 2011, attorney Landskoner filed a notice of withdrawal as Petitioners' counsel of record, which was granted on June 15, 2011.

Petitioners were ordered to provide a statement identifying their theory of vaccine causation. (Order, Oct. 25, 2011.) On December 1, 2011, Petitioners, proceeding *pro se*, filed a Response, alleging that J.A.N. received a pneumococcal vaccination on December 17, 2002, and within three months, her teachers "observed a significant decline in [J.A.N.'s] cognitive skills and behavior." (Response, Dec. 1, 2011, at 1.) Further, Petitioners contended that J.A.N. was developmentally delayed but "kept making significant progress," until certain vaccinations were administered on November 9, 2006. (*Id*.) Petitioners contended that at that time, J.A.N. lost significant progress, and was eventually diagnosed with an autism spectrum disorder. (*Id*.)

On December 27, 2011, Petitioners filed Exhibits 1 through 8, consisting of twenty pages of medical records,[3] along with a brief statement arguing that "[t]he greatest impact to [J.A.N.'s] condition was in Nov 2006 when she received her immunizations DTAP, IPV, MMR." (Notice, Dec. 27, 2011, at 2.)

On July 12, 2012, Petitioners filed the expert medical report of Phillip C. DeMio, M.D. That report stated that J.A.N. "has a regressive Autism Spectrum Disorder which she developed as a result of vaccines." (DeMio Report at 2.) Further, Dr. DeMio explained that J.A.N.'s condition was "due to the presence of a mitochondrial disease in association with a bona fide chromosomal abnormality." (*Id*.)

On September 7, 2012, Respondent filed a Supplemental Rule 4(c) Report and Motion to Dismiss (hereinafter "MTD"), contending that Petitioners' claim was untimely filed, under the Vaccine Act's statute of limitations. Respondent took the position that symptoms of J.A.N.'s autism spectrum disorder were evident before August 22, 2005, which date was thirty-six months prior to the filing date of Petitioners' claim. (MTD at 7.) Also, Respondent argued that

---

[3] These twenty pages of medical records are identified as Petitioners' Exhibits 1 through 8. On various dates thereafter, Petitioners filed exhibits 9 through 19. I will refer to these Exhibits as Ex. 1, Ex. 2, *etc*.

Petitioners' medical records contain evidence that J.A.N. suffered developmental regression in August 2006, three months before the November 2006 vaccinations, and that there was no evidence of a developmental regression after those vaccinations. (*Id*. at 14-15.)

On September 17, 2012, I filed an Order directing Respondent to file a statement specifically addressing whether Petitioners' "*significant aggravation claim*" had been timely filed. Respondent's Response, instead, contended that Petitioners' allegation concerning a significant aggravation lacked an *adequate factual basis*, since "nothing in the record indicates that J.A.N. suffered a regression" after her vaccinations in November 2006. (Resp. Response, Oct. 2, 2012, at 4-5.)

On November 30, 2012, a status conference occurred, with the participation of Petitioner Anand Nadar, and respondent's counsel, Heather Pearlman. The parties discussed the necessity of obtaining a more expansive expert report from Petitioners' expert, Dr. DeMio, to elaborate Petitioners' theory of the case in more detail. (Order, Dec. 3, 2012.) In my Order summarizing that conference, I advised that, "[i]t is highly encouraged that petitioners seek counsel familiar with Vaccine Act cases in this court in an effort to facilitate petitioners' case and the ability to acquire all necessary medical records." (*Id*.)

Petitioners' current counsel, Simina Vourlis, entered her appearance in this case on March 20, 2013. On April 18, 2013, Ms. Vourlis and Respondent's counsel participated in a status conference during which the parties discussed the possible untimeliness of Petitioners' original claim. (Order, April 19, 2013.)

Petitioners filed a Status Report on August 19, 2013, indicating that a large number of medical records had been obtained, and others remained outstanding. After reviewing Petitioners' medical and education records, attorney Vourlis reported, at a status conference held on November 30, 2013, that she was considering a recommendation to Petitioners that the claim be dismissed. Six days later, Petitioners filed a Motion for Decision Dismissing Petition, stating that the Petitioners had "chosen not to pursue further proceedings." (Motion, Nov. 26, 2013.) On December 6, 2013, I issued a Decision denying compensation and dismissing this case for insufficient proof. Judgment entered on January 7, 2014.

Petitioners filed the instant request for Attorneys' Fees and Costs on February 24, 2014, seeking a total award of $17,885. (Ex. 14 at 7.) Respondent filed an "Opposition" (hereinafter "Opp.") to Petitioners' application on March 11, 2014. On April 26, 2014, Petitioners filed a Reply to Respondent's Opposition. On April 27, 2014, Petitioners filed an amended petition for attorneys' fees and costs, which requested additional compensation for 7.3 hours that Petitioners' counsel had spent preparing their Reply.[4] (Ex. 19 at 8.)

I issued a Decision regarding an award of attorneys' fees and costs on June 13, 2014. Respondent filed a Motion for Reconsideration on June 20, 2014, presenting various objections to the Decision. After reviewing that motion, I noted that in my analysis I had confused two of

---

[4] The Decision filed on June 13, 2014, inadvertently did not include any discussion of the additional fees requested in Petitioners' amended request for attorneys' fees, which was filed on April 27, 2014.

the various opinions in the *Cloer* case.[5] Therefore, pursuant to that motion, I withdrew my Decision on June 27, 2014, indicating that a new decision would be filed after further analysis. On July 1, 2014, at Petitioners' request, I issued an Order stating that such decision would not issue until Petitioners' had the opportunity to file a response to Respondent's arguments. Petitioners filed their Response to the Motion for Reconsideration on November 3, 2014.

## II

### LEGAL STANDARD FOR AWARDING ATTORNEYS' FEES AND COSTS

Section 15(e) of the Vaccine Act sets out the relevant provisions regarding attorneys' fees and costs:

> In awarding compensation on a petition filed under section 300aa-11 of this title the special master or court shall also award as part of such compensation an amount to cover –
>
> (A) reasonable attorneys' fees, and
> (B) other costs,
> incurred in any proceeding on such petition. If the judgment of the United States Court of Federal Claims on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioners' reasonable attorneys' fees and costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought.

§300aa-15(e)(1). "The determination of the amount of reasonable attorney's fees is within the special master's discretion." *Saxton v. HHS*, 3 F.3d 1517, 1520 (Fed. Cir. 1993); *see also Shaw v. HHS*, 609 F.3d 1372, 1377 (Fed. Cir. 2010).

A.  *Timeliness*

In general, the statute provides that no petition may be filed for compensation under the Program for a vaccine-related injury "after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset *or of the significant aggravation* of such injury." § 300aa-16(a)(2) (emphasis added).

In recent years, there have been several appellate cases related to interpreting the start of the 36-month limitations period. In particular, the Federal Circuit addressed this issue in situations in which the medical community at large does not recognize a link between a vaccine

---

[5] For further discussion of the *Cloer* opinions, see Section II(A).

and a particular injury.  In 2010, the Federal Circuit held that "to be 'vaccine-related' the 'first symptom or manifestation of onset or of the significant aggravation of such injury' cannot occur until the medical community at large objectively recognizes a link between the vaccine and the injury."  *Cloer v. HHS*, 603 F.3d 1341, 1346 (Fed. Cir. 2010) ("*Cloer I*").

However, this interpretation was negated the following year.  In its decision on rehearing *en banc*, the Federal Circuit reversed its own 2010 panel ruling, holding that the medical community at large does *not* need to recognize a link, and that the statute of limitations "begins to run on the calendar date of the occurrence of the first medically recognized symptom or manifestation of onset of the injury claimed by the petitioner."  *Cloer v. HHS*, 654 F.3d 1322, 1324-25 (Fed. Cir. 2011) (*en banc*), *cert. denied*, 132 S. Ct. 1908 (2012) ("*Cloer II*").

### B.     *Calculation of attorneys' fees and costs*

Special masters have the authority to award "reasonable" attorneys' fees and litigation costs in Vaccine Act cases.  § 300aa-15(e)(1). This is true even when a petitioner is unsuccessful on the merits of the case, if the petition was filed in good faith and with a reasonable basis. *Id.* "The determination of the amount of reasonable attorneys' fees is within the special master's discretion." *Saxton v. HHS*, 3 F.3d 1517, 1520 (Fed. Cir. 1993); *see also Shaw v. HHS*, 609 F.3d 1372, 1377 (Fed. Cir. 2010).

Further, as to all aspects of a claim for attorneys' fees and costs, the burden is on the *petitioner* to demonstrate that the attorneys' fees claimed are "reasonable." *Sabella v. HHS*, 86 Fed. Cl. 201, 215 (2009); *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Rupert v. HHS*, 52 Fed. Cl. 684, 686 (2002); *Wilcox v. HHS*, No. 90-991V, 1997 WL 101572, at *4 (Fed. Cl. Spec. Mstr. Feb. 14, 1997). The petitioner's burden of proof to demonstrate "reasonableness" applies equally to *costs* as well as attorneys' fees. *Perreira v. HHS*, 27 Fed. Cl. 29, 34 (1992), *aff'd,* 33 F.3d 1375 (Fed. Cir. 1994).

One test of the "reasonableness" of a fee or cost item is whether a hypothetical petitioner, who had to use his own resources to pay his attorney for Vaccine Act representation, would be willing to pay for such expenditure. *Riggins v. HHS*, No. 99-382V, 2009 WL 3319818, at *3 (Fed. Cl. Spec. Mstr. June 15, 2009), *aff'd by unpublished order* (Fed. Cl. Dec. 10, 2009), *aff'd*, 406 Fed. App'x. 479 (Fed. Cir. 2011); *Sabella v. HHS*, No. 02-1627V, 2008 WL 4426040, at *28 (Fed. Cl. Spec. Mstr. Aug. 29, 2008), *aff'd in part and rev'd in part*, 86 Fed. Cl. 201 (2009). In this regard, the United States Court of Appeals for the Federal Circuit has noted that:

> [i]n the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.

*Saxton*, 3 F.3d at 1521 (emphasis in original) (quoting *Hensley*, 461 U.S. at 433-34). Therefore, in assessing the number of hours reasonably expended by an attorney, the court must exclude

those "hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley,* 461 U.S. at 434; *see also Riggins*, 2009 WL 3319818, at *4.

### III

### RESPONDENT'S ARGUMENTS

Respondent opposes Petitioners' request for attorneys' fees and costs on two grounds. First, Respondent argues that Petitioners failed to demonstrate that there was a "reasonable basis" for this claim (Opp. at 5-7.) Second, Respondent objects to particular items in the current request. Specifically, Respondent objects to the amount of time billed by attorney Simina Vourlis, including 7.5 hours to prepare and file the Petition for fees and costs. (Opp. at 8-9.) Respondent also objects to attorney Vourlis charging an attorney rate for certain tasks that were paralegal in nature. (Opp. at 9.) Finally, Respondent objects to attorney Vourlis' requested attorney rate of $350 per hour for her work on the case. (Opp. at 9-11.)

### IV

### "REASONABLE BASIS" ISSUE

I have carefully considered Respondent's arguments concerning "reasonable basis" (Opp. at 5-7), but I do not find them to be persuasive.

Respondent's primary argument is that "the extent of this claim's untimeliness precludes the objective finding of reasonableness." (Opp. at 6; Motion to Reconsider at 3.)

In this case, the petition was unsuccessful, *without* a determination of whether the petition was timely filed, because there was *insufficient proof* to support Petitioners' claim. (Decision, Dec. 6, 2013.) However, upon my review of the record, I conclude that Petitioners had a reasonable basis for initially filing their claim. Among other reasons, Petitioners were able to obtain the supporting opinion of a board-certified medical doctor, Dr. Phillip C. DeMio, a graduate of Case Western Reserve University School of Medicine. (DeMio Report, July 12, 2012.) Dr. DeMio's practice focuses on the medical testing and treatment of autism spectrum disorders. *Id.* There is also circumstantial evidence supporting the existence of a reasonable basis. For example, J.A.N.'s teachers observed a significant decline in J.A.N.'s cognitive skills and behavior shortly after receiving a vaccination on December 17, 2002. (Response, Dec. 1, 2011.) Based upon the overall circumstances, I find that Petitioners' claim was made in good faith, and that it was reasonable for Petitioners to initially file this case.

Petitioners were not represented by counsel between June 15, 2011, when Mr. Lanskoner withdrew as counsel, and March 20, 2013, when Ms. Vourlis entered her appearance. During

this time period when Petitioners represented themselves, *pro se*, they filed a "statement identifying our theory of vaccination injury" on December 1, 2011. (Response, Dec. 1, 2011.) In that document, the *pro se* Petitioners alleged that J.A.N. received a pneumococcal vaccination on December 17, 2002, and within three months, her teachers "observed a significant decline in [J.A.N.'s] cognitive skills and behavior." (*Id*.) Further, Petitioners contended that J.A.N. remained delayed but "kept making significant progress," until certain vaccinations were administered on November 9, 2006. (*Id*., at 1.) Petitioners contended that at that time, J.A.N. lost significant progress, and was eventually diagnosed with an autism spectrum disorder. (*Id*.)

These declarations by the *pro se* Petitioners presented two theories of causation: (1) that the vaccination administered on December 17, 2002 caused the *onset* of J.A.N.'s condition, and (2) that the vaccinations administered on November 9, 2006, caused a *significant aggravation* of J.A.N.'s condition.   On December 27, 2011, Petitioners filed another statement, contending that "[t]he greatest impact to [J.A.N.'s] condition was in Nov 2006 when she received her immunizations DTAP, IPV, MMR." (Notice, Dec. 27, 2011, at 2.)  This statement by the *pro se* Petitioners, although it does not employ standard legal language, is unmistakably an allegation that J.A.N. suffered *significant aggravation* of a preexisting condition.

Respondent's Supplemental Rule 4(c) Report and Motion to Dismiss, filed on September 7, 2012, indicated Respondent's awareness of Petitioners' significant aggravation argument by quoting both of the above-cited statements by the *pro se* Petitioners.  (MTD at 6, 15.) Respondent contended that J.A.N.'s developmental problems had existed long before the vaccinations administered on November 9, 2006, and "there is nothing in the record indicating that [J.A.N.] experienced a further regression after the vaccinations." (*Id*., at 15.)  On September 17, 2012, I filed an Order allowing Respondent an additional month to explain "whether petitioners' '*significant aggravation claim*' was *untimely filed*." (Order, Sept. 17, 2012, emphasis added.)  Respondent's Response, on October 2, 2012, however, did *not* address the *timeliness* of Petitioners' significant aggravation claim.   Rather, Respondent contended that the claim lacked *adequate factual support* based on the medical record. (Response, Oct. 2, 2012, at 4-5.)

On November 30, 2012, I convened a "digitally-recorded" status conference, with the participation of Petitioner Anand Nadar, and respondent's counsel, Heather Pearlman.  My Order, filed on December 3, 2012, summarized our discussion as follows:

> Pursuant to the discussion at that conference, petitioners shall contact their expert, Dr. Phillip DeMio, and request a more thorough medical opinion letter, which states specifically: (1) which vaccination(s) were the cause of [J.A.N.'s] Autism Spectrum Disorder (ASD), (2) what were the first symptoms of [J.A.N.'s] ASD, (3) when did those first symptoms appear in [J.A.N.], and (4) exactly how the vaccines caused or contributed to [J.A.N.'s] disorder…. Additionally, it is highly encouraged that petitioners seek counsel familiar with Vaccine Act cases in this court in an effort to facilitate petitioners' case and ability to acquire all necessary medical records that will be needed to move the case forward.

7

(Order, Dec. 3, 2012.)  This Order makes clear that on November 30, 2012, I considered certain basic factual issues to be unresolved, and that more medical records would be needed to clarify those matters.

Respondent did not object to Petitioners' efforts to retain new counsel at that time.  Nor did Respondent object, four months later, when Petitioners' new counsel, Ms. Vourlis, entered her appearance, on March 20, 2013.  Yet, Respondent now argues that "there was never a reasonable basis for Ms. Vourlis to enter her appearance in this case." (Motion for Reconsideration, June 20, 2014, at 5.)

On April 19, 2013, I convened another status conference, with the participation of Petitioners' new counsel, Ms. Vourlis, and Respondent's counsel.  After that conference, I issued an Order suggesting that Petitioner's claim *may* have been untimely filed, and instructing Petitioners' counsel to consider the timeliness issue before seeking another expert report concerning the merits of the claim. (Order, April 19, 2013.)

On August 19, 2013, Petitioners' counsel filed a status report containing, *inter alia*, the following representations:

> 1. Counsel has obtained and preliminarily reviewed over 720 pages of medical records including: prenatal records; labor and delivery records; birth records, past pediatric records, and consultation records from various sources.
> 2. Counsel is in the process of obtaining additional medical and educational records for the minor [J.A.N.] necessary to form a complete picture of the minor's pre- and post-vaccine condition.

(Status Report, Aug. 19, 2013.)  Thus, it appears that Ms. Vourlis promptly performed exactly the services that were required in this case.  Further, her billing record documents 12.4 hours that she spent in August, September, and October of 2013, reviewing those medical records, pursuant to instructions from this court. (Ex. 14 at 3-4.)  Based on her review of these records, and multiple consultations with her clients, Petitioners' counsel, Ms. Vourlis, filed a Motion for a decision dismissing their petition, on November 26, 2013.

When I filed an Order on September 17, 2012, requiring a clarification of Respondent's position regarding the *timeliness* of Petitioners' *significant aggravation* claim, Respondent did *not* provide that clarification.  However, Respondent's Opposition to Petitioner's request for attorney's fees and costs, filed eighteen months later, on March 11, 2014, stated that "the timeliness of a claim for significant aggravation was *not* an issue because the vaccinations implicated by Petitioners were administered within thirty-six months of the claim's filing." (Opp. at 3)(Emphasis added.)   In short, that statement by Respondent seems to acknowledge that this case was timely filed, at least with regard to Petitioners' *significant aggravation* claim.

I conclude that Petitioners' *significant aggravation* claim was timely filed, on August 22, 2008, well within 36 months after the alleged symptoms of *significant aggravation* occurred, in November 2006.  Thus, I also conclude that under all the circumstances, the Petitioners had a "reasonable basis" for filing the claim and pursuing it as far as they did.

In addition, Petitioners' final counsel, Ms. Vourlis, *did* have a reasonable basis for entering the case, on April 10, 2013, and helping Petitioners determine if they had a viable claim, particularly with regard to their "significant aggravation" claim. It is desirable that petitioners in Vaccine Act cases seek counsel in order to facilitate the petitioners' case. If attorney Vourlis had not entered her appearance, then collected and reviewed J.A.N.'s medical records, she could not have ethically advised Petitioners to file a Motion for a Dismissal Decision. By helping Petitioners determine if their claim was viable, attorney Vourlis facilitated the resolution of a case that had been pending since August 2008. Attorney Vourlis could not have known whether or not the petition was timely filed without first examining J.A.N.'s medical records. Attorney Vourlis could not have been expected to simply rely on Respondent's allegations regarding whether or not the petition was timely filed. (Reply at 5). Based on all the circumstances, I find that it was reasonable for attorney Vourlis to take the case, to spend a reasonable amount of time determining whether it was viable, and then to persuade Petitioners to seek a ruling on the record without trial.

V

**AMOUNT OF THE AWARD**

Petitioners' Motion for Award of Final Attorneys' Fees and Reimbursement Costs, filed on February 24, 2014, sought $17,885 in attorneys' fees, representing 51.1 hours of attorney services, billed at $350/hour. (Ex. 14 at 5.) Respondent objects to certain amounts claimed by Petitioners' counsel. (Opp. at 8-11.) Petitioners' amended petition for attorneys' fees, filed on April 27, 2014, requested additional compensation for 7.3 hours that Petitioners' counsel spent replying to Respondent's Opposition. (Ex. 19 at 7-8.)

*A. Attorney time generally*

Petitioners request that attorney Vourlis receive payment for 51.1 hours of work performed on Petitioners' case before March 2014. I disagree with Respondent that this amount of time is "patently unreasonable." (Opp. at 8.) While 51 hours is relatively high, it is not unreasonable for an attorney inexperienced in Vaccine Act cases to take significant time to thoroughly evaluate a case before providing Petitioners with an opinion on how to proceed.

*B. Attorney time in preparation of fees and costs application*

Respondent further objects to Petitioners' request for 7.5 hours to prepare and file their original petition for attorneys' fees. (Opp. at 9.) Petitioners indicate in their Reply that they listed only 2 hours of time to prepare the fee petition, not 7.5 hours as Respondent claims. (Reply, at 7.) However, I have reviewed Exhibit 14, Petitioners' Invoice for Services Rendered,

and note that Petitioners included separate entries for preparing an affidavit in support of attorneys' fees (2 hours), preparing the petition for fees and costs (2 hours), preparing the General Order #9 Statement (.5 hours), preparing an itemized billing statement (2 hours), preparing a notice of filing (.5 hours), and filing the fee petition using the court's electronic filing system (.5 hours). (Ex. 14 at 6.) I agree with Respondent that this amount of time is excessive, and find it appropriate to reduce the total time spent preparing and filing the fee petition to two hours at the attorney's hourly rate and five hours at a paralegal rate of $100 per hour.

### C. Work that appears to be paralegal work on its face

Respondent identifies three instances in which attorney Vourlis charged an attorney rate for tasks that were paralegal in nature, and contends that these tasks should have been billed at a paralegal rate, not an attorney rate. (Opp. at 9.) Petitioners argue in their Reply that attorney Vourlis is a sole practitioner and does not employ a paralegal or legal assistant. Petitioners do not dispute that the tasks identified by Respondent were paralegal in nature, but assert that all work done by Petitioners' counsel took time and should be billed at the same rate.

In this regard, the case law is clear that tasks performed by attorneys that could be completed by a paralegal or legal assistant should *not* be billed at an attorney's rate. *See, e.g.*, *Sabella v. HHS*, 2008 WL 4426040, at *22 (Fed. Cl. Spec. Mstr. Aug. 29. 2008), *aff'd on this point and rev'd on other point, Sabella v. HHS* 86 Fed. Cl. 201, 225 (2009); *Valdes v. HHS*, 89 Fed. Cl. 415, 425 (2009), *affirming*, in relevant part, *Valdes v. HHS*, No. 99-310V, 2009 WL 1456437, at *4 (Fed. Cl. Spec. Mstr. Apr. 30, 2009); *Plott v. HHS*, No. 92-633V, 1997 WL 842543, at *4 (Fed. Cl. Spec. Mstr. Apr. 23, 1997). Thus, I will compensate the 3.5 hours identified by Respondent at a paralegal rate of $100.

### D. Supplemental requests for fees

Petitioners' amended petition for attorneys' fees, filed on April 27, 2014, requested additional compensation, at $350/hour, for 7.3 hours that Petitioners' counsel spent preparing a Reply to Respondent's Opposition. (*See* Reply, filed April 26, 2014; Ex. 19, at 7-8.) Petitioners' amended invoice notes that counsel expended 5 of those hours preparing Petitioner's ten-page Reply document. (Ex. 19, at 7- 8.) The balance, 2.3 hours, was spent on e-mail exchanges, preparing a Motion for extension of time, and revising Petitioner's invoice for services rendered. (*Id*.) After carefully reviewing Petitioners' filings concerning this matter, I will award five hours at the attorney's rate, for services related to replying to Respondent's Opposition; and one hour for related administrative tasks, at the paralegal rate.

### E. Attorney hourly rate

10

Respondent objects to attorney Vourlis' requested rate of $350 per hour for her work on the case. (Opp. at 9-11.) However, unhelpfully, Respondent neither suggests an attorney rate that Respondent would find appropriate, nor does Respondent affirmatively provide *evidence* concerning what an appropriate rate for Ms. Vourlis' services might be. Attorney Vourlis is a board-certified Civil Trial Advocate with an established career spanning 23 years. (Reply at 8.) However, $350 per hour is a fairly high rate, and attorney Vourlis does not have experience litigating Vaccine Act proceedings. After considering all of these factors, I will reduce attorney Vourlis' attorney rate to $300 per hour.

*F.  Summary of reductions*

In conclusion, I award Petitioners a total of $15,080 in attorneys' fees. This amount was calculated as follows: There were 51.1 attorney hours billed before March 2014, which will be reduced by 5.5 hours (*see* Section V(B), above), resulting in 45.6 compensable hours. Those 45.6 attorney hours will be further reduced by 3.5 hours spent on paralegal tasks (*see* Section V(C)), resulting in a total of 42.1 hours, compensable at the attorney rate of $300/hour. There were 7.3 attorney hours billed in March and April 2014, which will be reduced to 5.0 hours at the attorney rate and 1 hour at the paralegal rate (*see* Section V(D)).

```
                    (Before March 2014) 42.1 attorney hours at $300/hour  =   $12,630
          (March 2014 through the present) 5 attorney hours at $300/hour  =     1,500
    5 hours (for the fee petition), plus 3.5 hours for various administrative work, plus
     1 hour for the amended fees request, totaling 9.5 hours, at the paralegal rate of $100/hour  =       950
                                                                  Total =   $15,080
```

## VI

## CONCLUSION

For the foregoing reasons, I award Petitioners $15,080 in attorneys' fees. The $15,080 award shall be made in the form of a check payable jointly to Petitioners and Petitioners' counsel, Simina Vourlis.

/s/ George L. Hastings, Jr.
George L. Hastings, Jr.
Special Master